# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLORADO
# Judge Daniel D. Domenico

Civil Action No. 1:20-cv-01623-DDD

ERIC BARCKLOW,

   Plaintiff,

v.

COMMISSIONER OF SOCIAL SECURITY,

   Defendant.

## ORDER AFFIRMING DECISION OF
## ADMINISTRATIVE LAW JUDGE

Plaintiff Eric Barcklow has schizophrenia. (AR at 12.[1]) He filed an application for disability benefits with the Commissioner of Social Security, the Defendant, on March 8, 2018. (*Id.* at 10.) After a hearing, an Administrative Law Judge (ALJ) found that Mr. Barcklow had a residual functional capacity that enables him to perform work at all exertional levels. (*Id.* at 14.) The ALJ also found that a significant number of jobs exist in the national economy that Mr. Barcklow can perform. (*Id.* at 20.) In the light of his residual functional capacity and the availability of work for Mr. Barcklow, the ALJ denied his application for benefits. (*Id.* at 21.) The Appeals Council denied Mr. Barcklow review, (*id.* at 1), and Mr. Barcklow then filed this appeal. He argues that the ALJ

---

[1] AR refers to the Administrative Record below, which is document 14 and its attachments.

committed four reversible errors. For the reasons that follow, the Court disagrees. The decision of the ALJ is affirmed.

## I. Substantial Evidence

The key aspect of the ALJ's decision for purposes of Mr. Barcklow's appeal is his determination at step four of the five-step sequential process that governs disability-benefit determinations[2] that Mr. Barcklow has a residual functional capacity that enables him to tolerate low-stress work. At the outset, the ALJ noted that Mr. Barcklow alleged that his schizophrenia affects his memory, concentration, diligence, and ability to follow instructions. (AR at 15.) The ALJ also explained that Mr. Barcklow himself testified he is unable to work because of auditory hallucinations. (*Id.*) The ALJ concluded that Mr. Barcklow's schizophrenia could reasonably cause most of the symptoms he said he experienced. (*Id.* at 14.) The ALJ noted, however, that Mr. Barcklow testified that he regularly participates in therapy; is on medication that calms his hallucinations; cares for his children, wife and dog; manages money; shops; and socializes outside the house. (*Id.*)

The ALJ next determined that the objective medical evidence did not substantiate Mr. Barcklow's allegations that he was unable to work. (*Id.* at 15.) The ALJ noted that, during the relevant period for his application, medical records indicated that Mr. Barcklow reported "hypervigilance, trouble concentrating, poor attention, and insomnia" in March 2018. (*Id.* at 16.) But by October 2018, medical records indicated that Mr. Barcklow's condition had improved: among other things, medication decreased Mr. Barcklow's hallucinations and helped him organize his

---

[2] *See* 20 C.F.R. § 404.1520; *Bowen v. Yuckert*, 482 U.S. 137, 140–42 (1987); *Casias v. Sec'y of Health & Human Servs.*, 933 F.2d 799, 801 (10th Cir. 1991) (citation omitted).

thoughts. (*Id.* at 17.) Medical records from follow-ups six and twelve months later said that Mr. Barcklow's condition continued to improve. (*Id.*) The ALJ noted that, "once stabilized, the claimant was generally alert, oriented, cooperative . . . without pressured speech, restlessness, or hyperactive behavior." (*Id.*)

In reaching his conclusion that Mr. Barcklow had a residual functional capacity that enabled Mr. Barcklow to work, the ALJ gave great weight to the opinion of the state agency reviewing psychologist, Jon Anderson, and little weight to the opinions of Dr. Russell Thye, a consultative examiner who examined Mr. Barcklow in September 2018, and the March 2018 opinion of Daniel Frantz, a psychiatric and mental health clinical nurse specialist who assessed Mr. Barcklow multiple times over 2018 and 2019. (*Id.* at 18.) Dr. Anderson opined that Mr. Barcklow had only moderate limitations given that, despite his condition, he can follow simple instructions, concentrate, and persist for up to two hours of activity. (*Id.*) The ALJ found Dr. Anderson's opinion persuasive because it was consistent with the overall improvement of Mr. Barcklow's condition. (*Id.*) Dr. Thye, by contrast, opined that Mr. Barcklow had marked limitations in his ability to receive criticism, work with others, and persist in simple tasks. (*Id.*) The ALJ found Dr. Thye's opinion unpersuasive because it wasn't consistent with the overall objective medical evidence. (*Id.*) In his March 2018 assessment of Mr. Barcklow, Mr. Frantz offered a similar opinion to Dr. Thye that Mr. Barcklow was mostly unable to carry out simple work tasks. (*Id.*) The ALJ likewise gave Mr. Frantz's March 2018 opinion little weight because it did not account for the marked improvement in Mr. Barcklow's condition over time, which Mr. Frantz himself observed. (*Id.* at 18–19.)

Whether this Court would reach the same conclusion as the ALJ is not the question. To withstand challenge on appeal, the ALJ's ultimate

determination must be supported by substantial evidence. *Wall v. Astrue*, 561 F.3d 1048, 1052 (10th Cir. 2009). Substantial evidence is evidence that a reasonable mind might accept as adequate to support a conclusion. *Id.* "It requires more than a scintilla, but less than a preponderance." *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007).

Here, the ALJ's determination surpasses this standard. A reasonable person could conclude that Mr. Barcklow's condition had improved and stabilized with medical interventions based on the objective medical evidence in the record. Mr. Barcklow rests his argument to the contrary on the ALJ's decision to discount Dr. Thye's and Mr. Frantz's opinions, but this wasn't error. Instead, the ALJ weighed these opinions against other objective medical evidence and Mr. Barcklow's own testimony that as time went on, his symptoms eased. And indeed, progress notes from Mr. Frantz specifically state that Mr. Barcklow's condition had improved significantly by the end of 2018. (*See, e.g.*, AR at 342 (noting that on December 27, 2018 "Eric reports that he feels the current regimen is moderating symptoms well and that he is presently not having hallucinations and that his 'odd thoughts' are reduced and are less compelling"); *see also id.* at 343 (noting that on March 5, 2019 Mr. Barcklow again "reports that he feels the current regimen is moderating symptoms well").) The ALJ's overall determination was thus supported by substantial evidence.

## II. Dr. Thye

Dr. Thye saw Mr. Barcklow on September 17, 2018. (AR at 328.) Dr. Thye administered several diagnostic tests, which indicated that Mr. Barcklow had significant limitations in his memory, concentration, basic knowledge, abstract thinking, and judgment. (*Id.* at 330–31.) Mr. Barcklow argues that the ALJ erred in discounting these test results

4

and Dr. Thye's overall conclusion that Mr. Barcklow's "ability to accept instruction and constructive criticism and respond appropriately to co-workers and the public in a working setting is markedly impaired." (*Id.* at 331.) But as the ALJ noted, other aspects of Dr. Thye's evaluation suggested that, with treatment, Mr. Barcklow could work. For example, Dr. Thye opined that, "with appropriate engagement in treatment, [Mr. Barcklow] would likely realize a reduction in symptoms over time, with increased coping skills and level of functioning." (*Id.*) That is precisely what later examinations of Mr. Barcklow found. And indeed, even during Dr. Thye's evaluation, Mr. Barcklow appeared well-dressed, cooperative, and able to converse. (*Id.* at 328.) Dr. Thye also noted that Mr. Barcklow cares for his children, cooks, cleans, does laundry and grocery shopping, and manages his family's finances. (*Id.* at 329.) The ALJ thus reasonably weighted Dr. Thye's opinions.

### III. Mr. Frantz

Mr. Barcklow focuses on two opinions of Mr. Frantz. First, in March 2018, Mr. Frantz noted that Mr. Barcklow needs "high levels of assistance" in caring for himself. (AR at 287.) Second, in June 2018, Mr. Frantz noted he had observed "no improvement" in Mr. Barcklow's symptoms between clinical appointments. (*Id.* at 323.) These random statements do not undermine the substantial evidence that supports the ALJ's overall determination, however. Mr. Frantz's own assessments from later in 2018 and into 2019, as noted above, make clear that Mr. Barcklow's symptoms did improve over the course of the year. (*See, e.g.*, AR at 342–343.) The ALJ thus reasonably concluded that Mr. Frantz's earlier opinions were not consistent with the entirety of the evidence.

## IV. Consistency

Last, Mr. Barcklow argues that the factors in 20 C.F.R. § 404.1520c(c) required the ALJ to credit the opinions of Dr. Thye and Mr. Frantz over Dr. Anderson. Section 404.1520c(c) lists the factors the ALJ considers when weighing medical opinions. The ALJ must consider the opinion's supportability, consistency with other evidence, the opinion provider's relationship with the claimant, the opinion provider's specialization, and any other factors that "support or contradict" the opinion. *Id.*

Mr. Barcklow argues that Dr. Thye's and Mr. Frantz' opinions are more supportable than Dr. Anderson's opinion. But the ALJ did not err in his evaluation of the medical evidence. Dr. Anderson's conclusion was supported by review of the entirety of Mr. Barcklow's medical file at the time, including those opinions that suggested Mr. Barcklow's impairment were less severe than he alleged. (*See* AR at 78-88.) As for consistency, the ALJ reasonably concluded that Dr. Anderson's opinion was consistent with the overall evidence of improvement in Mr. Barcklow's condition, whereas Dr. Thye's September 2018 opinion, and Mr. Frantz's March and June 2018 opinions were not. The ALJ's application of the § 404.1520c(c) factors was supported by substantial evidence.

## CONCLUSION

The decision of the ALJ is **AFFIRMED**.

DATED: May 4, 2021.	BY THE COURT:

Daniel D. Domenico
United States District Judge